UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-22736-CIV-SEITZ/O'SULLIVAN

ANTHONY CHIARENZA,[1]

        Plaintiff,

v.

IBSG INTERNATIONAL, INC., *et al.*,

        Defendants.
_____/

## ORDER GRANTING MOTIONS TO DISMISS

THIS MATTER is before the Court on Defendant Jewett, Schwartz, Wolfe & Associates' Motion to Dismiss [DE-46] and Defendant Geoffrey Birch's Motion to Dismiss [DE-47]. Plaintiff's two count complaint alleges a violations of federal securities laws. Specifically, Count I alleges violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, against all Defendants and Count II alleges a violation of section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a), against the two individual Defendants as controlling parties. The moving Defendants[2] seek to dismiss the claims against them because

---

[1] This complaint was originally filed as a proposed class action in the Eastern District of New York On July 8, 2009, the New York court appointed Anthony Chiarenza, Jeffrey Bonvallet, and Pierce Lord as lead plaintiffs for the class, despite the fact that no class had yet been certified. The complaint does not contain any allegations as to Jeffrey Bonvallet and Pierce Lord. The action was transferred to this Court on September 14, 2009. On December 18, 2009, this Court entered its Order Setting Trial Date, Pretrial Deadlines and Referral to Magistrate, which set filing deadlines, including the deadline for filing the motion for class certification. On July 16, 2010, the Court struck the Plaintiff's Motion for Class Certification because it was filed more than three months after the Court set deadline and without leave of Court. Consequently, this case is no longer a proposed class action and only the claims of Plaintiff Chiarenza remain pending.

[2] The non-moving Defendants, IBSG International, Inc. and Michael Rivers have not appeared in this action. According to Plaintiff, Defendant Rivers has never been served and Defendant IBSG has been served but has never appeared.

Plaintiff has not adequately pled scienter, as required by 15 U.S.C. § 78u-4(b)(2). Because Plaintiff has not adequately pled scienter against Jewett, Schwartz, Wolfe & Associates or against Defendant Birch, both Motions are granted.

## I. Allegations in the Complaint

Plaintiff Chiarenza purchased in excess of 53,000 shares of stock in Defendant IBSG International, Inc. (IBSG) between April 1, 2008 and January 12, 2009. IBSG is a Florida corporation that is a holding company for four software subsidiaries through which ISBG provides software solutions and services. Defendant Rivers was the President and Chief Executive Officer (CEO) of IBSG and a member of the board from 2003 until he was relieved of his position as CEO on January 6, 2009. Rivers signed the 2007 10-KSB[3] on behalf of IBSG and signed the 2008 10-Qs[4] on behalf of IBSG. Defendant Birch was the Treasurer, Chief Financial Officer (CFO) and a director of IBSG from November 2003 until his resignation on December 23, 2008. Because of their roles at the company, Birch and Rivers were privy to and participated in the creation of IBSG's financial reporting, had access to other members of IBSG's management team, had access to internal reports, data, and other information about IBSG's finances, revenues, cash balances, operations, and sales, and were aware, or recklessly disregarded, that IBSG was disseminating information to the public that was materially false and misleading.

---

[3]According to the SEC's website, a 10-KSB is an "[o]ptional form for annual and transition reports of small business issuers under section 13 or 15(d)." The form stopped being accepted as of March 16, 2009. See http://www.sec.gov/info/edgar/forms/edgform.pdf.

[4]According to the SEC's website a 10-Q is a "Quarterly report pursuant to sections 13 or 15(d)." See http://www.sec.gov/info/edgar/forms/edgform.pdf.

Birch signed the 2007 10-KSB and the 2008 10-Qs on behalf of IBSG, in his capacity as CFO and as IBSG's Principal Accounting Officer. Defendant Jewett, Schwartz, Wolfe & Associates (JSWA) is an accounting and tax advisory firm. According to IBSG's 2007 10-KSB, JSWA was hired to audit IBSG's annual financial statements on January 18, 2008. JSWA's audit report for IBSG's 2007 fiscal year included an opinion, dated March 27, 2008, that IBSG's financial statements conformed with generally accepted accounting principles and was included in IBSG's 2007 10-KSB.

On April 1, 2008, IBSG filed its Form 10-KSB for the fiscal year ending December 31, 2007. The 2007 10-KSB reported net income of $4,859,093, which was a significant increase from the 2006 fiscal year; cash on hand, as of December 31, 2007, of $2,138,469; and total assets of $35,756,989. The 2007 10-KSB contained certifications from Rivers and Birch that the 10-KSB did not contain any untrue statement of material fact or omit to state a material fact, that the financial information included in the 10-KSB fairly presented the financial condition of the company, and that the certifying officers were responsible for establishing, maintaining, and evaluating IBSG's disclosure controls. The 2007 10-KSB also included a Report of Independent Accountants prepared by JSWA, which stated that "[i]n our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of IBSG International, Inc. . . . and the results of their operations and their cash flows . . . in conformity with United States generally accepted accounting principles." The Report of Independent Accountants also noted that IBSG had restated its financial statements for the year ended December 31, 2006 to correct errors relating to revenue recognition.

On May 15, 2008, Defendants filed IBSG's 10-Q for the quarterly period ending March

31, 2008, which reported net income of $1,131,209, revenue of $4,779,745, cash on hand of $4,001,375, and total assets of $40,040,008. On August 14, 2008, Defendants filed IBSG's 10-Q for the quarterly period ending June 30, 2008, which reported net income of $1,265,048, revenue of $4,424,798, cash on hand of $7,376,612, and total assets of $43,479,870. The reported revenue represented a 45% increase compared to the same period a year earlier and a 52% increase for the same six-month period a year earlier. On November 14, 2008, Defendants filed IBSG's 10-Q for the quarterly period ending September 30, 2008, which reported net income of $712,024, revenue of $3,728,152, cash on hand of $8,952,415, and total assets of $45,395,956. The 2007 10-KSB and 2008 10-Qs were materially false and misleading because revenue was improperly recognized which led to reported revenue and net income figures that were materially misstated.

On December 31, 2008, IBSG filed a Form 8-K announcing that Defendant Birch had resigned as CFO on December 23, 2008 and that Renata Sirota had been appointed the new CFO on the same day. On January 8, 2009, IBSG filed a Form 8-K announcing that, on January 6, 2009, Defendant Rivers have been relieved of his position as CEO, but remained a member of the Board of Directors. On January 12, 2009, IBSG filed another Form 8-K announcing that there were "possible issues underlying the recording of the proceeds from business transactions as revenue" and that IBSG's "previously issued financial statements during the 2008 fiscal year should not be relied upon at this time." The January 12, 2009 Form 8-K also announced the resignation of Renata Sirota. On January 27, 2009, IBSG issued another Form 8-K confirming that its 2008 financial statements should not be relied upon and were inaccurate. As a result of these disclosures the price of IBSG's common stock fell.

Defendants were aware of or recklessly disregarded IBSG's revenue recognition issues. Revenue recognition problems arose in fiscal years 2005 and 2006, prior to the relevant time period in the complaint. In January 2008, IBSG had amended its 2005 and 2006 10-KSBs resulting in a decrease in net income for fiscal years 2005 and 2006. The adjustments had to be made to adjust amounts reported as revenue to deferred revenue.[5] Thus, Defendants knew or should have known that revenue recognition was a critical accounting issue. IBSG's 2007 10-KSB noted that "substantially all of [IBSG's] revenue comes from three customers, all of whom are governmental entities." IBSG's filings also noted that there was a "lack of segregation of duties at the Company due to the small number of employees dealing with general and administrative matters." IBSG's Board appointed Defendant Birch as a financial expert, in lieu of appointing an audit committee. Furthermore, JSWA was aware of IBSG's past revenue recognition issues, as noted in its Report of Independent Accountant included in the 2007 10-KSB. Last, cash on hand can be easily ascertained and audited, and the material discrepancies in reported cash and assets indicate, at a minimum, an extraordinary degree of recklessness.

Based on these allegations, Plaintiff alleges that all Defendants violated section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 and that the individual Defendants violated section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a), which establishes liability for "controlling persons," based on a violation of section 10(b).

---

[5]For 2006, $2.7 million of previously recognized revenue was reclassified as deferred income. For 2005, $2.3 million of previously reported revenue was reclassified as deferred income.

## II. Standard for Motions to Dismiss in a Securities Fraud Case

### a. General Standard for a Motion to Dismiss

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter to . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. Accordingly, "unwarranted deductions of . . . legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### b. Standard for Pleading Violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5

In order to state a claim for violation of section 10(b) or Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). The Private Securities Litigation Reform Act of 1995 (PSLRA) applies a heightened pleading standard to several of these elements, including scienter:

> (b) Requirements for securities fraud actions
>     (1) Misleading statements and omissions

> In any private action arising under this chapter in which the plaintiff alleges that the defendant--
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.
>
> (2) Required state of mind
> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b). Thus, the PSLRA requires a plaintiff "to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.,* the defendant's intention to 'deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 and n.12 (1976)).

In *Tellabs*, the Supreme Court set out the standard for pleading scienter. An "inference of scienter must be more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference." 551 U.S. at 314. In making this determination, a court must: (1) accept all factual allegations in the complaint as true; (2) consider the compliant in its entirety; and (3) take into account opposing inferences when determining whether the allegations in the complaint give rise to a strong inference of scienter. *Id.* at 322-23. In the Eleventh Circuit, scienter is either the intent to defraud or severe recklessness on the part of the defendant. *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 790 (11th Cir. 2010).

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Id.* at 791 (quoting *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989)).

Furthermore, a complaint alleging violations of section 10(b) and Rule 10b-5 must also comply with Federal Rule of Civil Procedure 9(b), which requires that fraud be pled with particularity. *Ziemba v. Cascade Intern'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

> "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.' " *Durham v. Bus. Management Assocs.*, 847 F.2d 1505, 1511 (11th Cir.1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984)). The application of Rule 9(b), however, "must not abrogate the concept of notice pleading." *Id.* Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997) (internal quotation omitted).

*Ziemba*, 256 F.3d at 1202. Thus, in order to withstand a motion to dismiss, a securities fraud complaint must be pled with particularity as to the fraudulent actions and the facts that give rise to an inference of scienter.

### III. JSWA's Motion to Dismiss Should Be Granted

JSWA moves to dismiss the complaint because the complaint does not adequately plead scienter as to JSWA. JSWA points out that there are only a few allegations specific to JSWA. Essentially, the factual allegations specific to JSWA are that JSWA was aware of past revenue recognition problems, cash on hand can easily be ascertained and audited, JSWA had access to

8

IBSG's management and internal reports and information, and JSWA certified IBSG's financial statements that contained materially false and misleading statements. Based on these factual allegations, Plaintiff concludes that JSWA had actual knowledge of the misrepresentations or omissions or acted with reckless disregard for the truth. JSWA argues that this is not enough to establish scienter.

In response, Plaintiff argues that JSWA is not viewing the complaint holistically, as required by *Tellabs*. Plaintiff argues that the complaint alleges a multi-million dollar overstatement of cash on hand, income, assets, and revenues, purportedly audited by JSWA; several "red flags,[6]" including IBSG's prior history of revenue recognition errors and a small management group with a lack of segregation of management duties; and only three customers who accounted for substantially all of IBSG's revenue. Plaintiff further points to violations of GAAP[7] and GAAS[8] rules. However, Plaintiff has not pled such violations in his complaint and, therefore, the Court will not consider them in determining if Plaintiff has adequately pled scienter. Plaintiff also points to allegations that JSWA certified that JSWA had examined, on a test basis, evidence supporting the amounts and disclosures in the consolidated financial

---

[6]"Red flags" are "those facts which come to the attention of an auditor which would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1268 (11th Cir. 2006) (quoting *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1334 (M.D. Fla.2002)).

[7]GAAP are Generally Accepted Accounting Principles, which have been approved by the Financial Accounting Standards Board of the American Institute of Certified Public Accountants. *Garfield*, 466 F.3d at 1267 n.8.

[8]GAAS are the Generally Accepted Auditing Standards established by the Auditing Standards Board of the American Institute of Certified Public Accountants for the conduct of auditors performing an examination. *Garfield*, 466 F.3d at 1267 n.8.

statements.

While ignoring red flags may rise to the level of severe recklessness necessary to establish scienter, Plaintiff has not pled sufficient red flags to meet that high level. Nothing in the complaint explains why a small management group with a lack of segregation of management duties and a small number of customers would automatically constitute a red flag. Furthermore, while JSWA was aware of the other red flag, prior problems with revenue recognition, JSWA was the entity that brought the problem to the public's attention in its statement in the 2007 10-KSB. Knowledge of this past problem, on its own, or even in conjunction with the non-pled GAAP and GAAS violations, is not enough to establish scienter. Furthermore, a plaintiff cannot establish scienter by alleging that an auditor would have discovered the fraud had it not violated GAAP or GAAS. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006). In this case, Plaintiff has not pled "any facts suggesting actual awareness by [JSWA] of any fraud [or] pointed to [any] 'tips,' letters, or conversations raising inferences that [JSWA] knew of any fraud [or alleged] facts suggesting that [JSWA] was severely reckless in not knowing about any fraud." *See Ziemba v. Cascade Intern'l, Inc.*, 256 F.3d 1194, 1210 (11th Cir. 2001) (dismissing 10(b) and 10b-5 claims against auditor for failure to adequately plead); *Garfield*, 466 F.3d at 1268 (dismissing complaint against auditor where complaint did not allege that the auditor knew or should have known that company recklessly concealed overstated revenues and complaint did not allege that auditor knew about the alleged reason for an increased "irregular" allowance for doubtful accounts). JSWA's behavior, as pled in the complaint and taking the allegations in the light most favorable to Plaintiff, does not constitute an "extreme departure from the standards of ordinary care." At the very best, one could argue that JSWA's behavior amounted to inexcusable

negligence.

The cases relied on by Plaintiff, most of which pre-date *Tellabs*, and are not binding on this Court, simply do not support a finding of scienter under the circumstances in this case. *In re Suprema Specialties, Inc. Securities Litigation*, 438 F.3d 256, 280-81 (3d Cir. 2006), which found that scienter had been adequately pled against the auditor, involved specific allegations of violations of GAAS standards and allegations of thirty red flags that the auditor ignored. In this case, Plaintiff has not pled any violations of GAAS standards and has really only pled a single red flag – knowledge of past revenue recognition problems. In *Schultz v. Applica Inc.*, 488 F. Supp. 2d 1219, 1225 (S.D. Fla. 2007), the court stated that scienter is adequately pled when GAAP violations are pled along with several red flags, including insider trading, the magnitude of improperly recognized revenue, whether the violations related to major balance sheet items based on contracts of great financial importance, and whether the GAAP violations also violated the corporation's internal policies. In *Schultz* the court found that scienter had been adequately pled against a particular defendant where the complaint included allegations of GAAP violations, which also violated internal policies, and a failure to disclose by the particular defendant who had actual knowledge of problems with the products at issue and also had knowledge of the importance of that product in sales projections. *Id.* at 1226. In this case, there are no pled violations of GAAP or internal policies and only inferences of knowledge.

In *Miller v. Dyadic Intern'l, Inc.*, 2008 WL 5070279, *13-14 (S.D. Fla. 2008), the court found that scienter was adequately pled against some defendants who knew of a prior scheme of fraud, including unrecorded transactions and knowledge of attempts to shield the company, and knew that the same person was still running the company who was involved in the prior scheme.

11

However, in *Miller*, unlike here, the allegations clearly established that there had been a prior fraud scheme. In this case, the allegations simply establish that there had been a prior misstatement of revenues. There is no evidence of a prior scheme to misstate revenue or otherwise defraud. Additionally, none of the allegations allege that JSWA was involved in the preparation of IBSG's 10-Qs. Thus, the only allegation specific to JSWA is its preparation of the 2007 audit and the inclusion of JSWA's opinion in the 2007 10-KSB. There simply is not enough pled to establish an inference of scienter against JSWA. Furthermore, most of the allegations against JSWA are conclusory without supporting facts. Consequently, JSWA's motion should be granted.

**IV. Birch's Motion to Dismiss Should Be Granted**

Birch also moves to dismiss both counts against him because Plaintiff has failed to adequately plead scienter. He argues that there are no scienter allegations specific to him, other than the fact that he signed IBSG's SEC filings. Thus, the complaint fails to allege facts that show that he had actual knowledge of wrongdoing or acted with severe recklessness. In response, Plaintiff argues that the following allegations establish Birch's scienter: his signing of all the false statements and Sarbanes-Oxley certifications, his role as CFO and Treasurer at the company, his financial expertise, his termination,[9] the limited number of IBSG customers, the lack of segregation of duties at IBSG, the false statements involved "core" company issues, and the magnitude and obviousness of the misstatements.

While it is a closer question, Plaintiff has failed to plead scienter as to Birch. The issue is

---

[9]While Plaintiff's response refers to Birch's "termination," the complaint alleges that Birch resigned.

12

are there sufficient allegations of knowing concealment or misrepresentation rather than inexcusable negligence. First, many of the facts relied on by Plaintiff to support an inference of scienter are not pled with sufficient particularity to comply with Rule 9(b). While Plaintiff relies on Birch's role at the company, Plaintiff has not alleged what that role was, other than alleging that Birch was the CFO. Plaintiff has not specifically alleged what any of Birch's duties were at IBSG. Although Plaintiff alleges that Birch had expertise, Plaintiff does so based on the fact that IBSG's board of directors determined that Birch had the expertise to be the financial expert as defined by the Securities Exchange Act. However, Plaintiff has pled no facts that establish what expertise Birch actually had. Plaintiff has not shown why the board of directors chose Birch as the financial expert, or if it was even reasonable for them to do so. While presumably a CFO has access to financial information, and Plaintiff has so pled, the specificity requirement mandates that Plaintiff plead the type of financial information to which Birch had access, plus facts that would show why knowledge of any such information would have alerted him to fraud. Plaintiff's allegations that there was a lack of segregation of duties at IBSG is a conclusory statement without any supporting facts to establish which duties were not segregated, who had what obligations, or which duties were performed by multiple people. Thus, these facts lack the specificity required to support a finding of scienter. *Compare In re: Recoton Corp. Securities Litigation*, 358 F. Supp. 2d 1130, 1148 (M.D. Fla. 2005) (finding that no inference of scienter where anonymous witnesses attested that individual defendants received drafts of, and were required to approve and sign off on, all SEC filings and press releases implicating financial matters and where complaint alleged that individual defendants had access to detailed and current financial information via the company computer system).

Second, Birch's resignation, without more specific facts as to Birch's knowledge, is not enough to establish scienter. Lastly, Plaintiff's allegations that the misstatements concerned core matters and involved large amounts of money do not support scienter because Plaintiff has failed to plead any facts that would support an inference that Birch actually knew about the misstatements or the size of the amounts involved. Furthermore, because Plaintiff has failed to allege what Birch's actual job duties were there are not enough facts pled to establish that Birch knew or should have known about such core matters. Consequently, considering the totality of the circumstances alleged in the complaint does not lead to a cogent and compelling inference of scienter.

Again, the cases relied on by Plaintiff do not support his arguments, are not binding on this Court, and many pre-date *Tellabs*. In *In re PMA Capital Corp. Securities Litigation*, 2005 WL 1806503, *10 (E.D. Pa. 2005), the Court found statements about internal controls actionable when the defendants failed to disclose specific deficiencies with internal controls. In this case, Plaintiff has not actually alleged any specific deficiencies with internal controls; he has simply alleged that Birch and Rivers were responsible for establishing, maintaining and evaluating internal controls. In *In re Telxon Corp. Securities Litigation*, 133 F. Supp. 2d 1010, 1027 (N.D. Ohio 2000), the court found that the plaintiff had adequately pled scienter where the complaint alleged: (1) the corporation had to restate its prior financial disclosures for the past three years, (2) blatant violations of GAAP and other accounting principles, (3) factors that should have alerted defendants that the financial data they were releasing was incorrect, (4) the motivation for management to misstate the financial data, and (5) the opportunities the individual defendants had to control the nature and public dissemination of the corporation's financial data. Here,

14

Plaintiff has not alleged GAAP violations, has not alleged Birch's motive, has not alleged any specific factors that should have alerted Birch to the falsity of the financial data, and has not alleged that Birch controlled the dissemination of the financial data.

Furthermore, unlike in *In re Paincare Holdings Securities Litigation*, 541 F. Supp. 2d 1283, 1293 (M.D. Fla. 2008), where the complaint alleged the details of the individual defendants' positions within the company, their access to insider information, experience and accounting backgrounds, by which they knew of the GAAP standards, that their bonuses were tied to the company's earnings, and, significantly, that they knew of the GAAP violations prior to informing the public, Plaintiff in this case has not alleged any of these things. Plaintiff has not alleged the details of Birch's job, has not alleged that Birch had access to insider information, or for that matter, what information Birch had access to, has not alleged Birch's experience or accounting or financial background, has not alleged that Birch knew GAAP standards, has not alleged that Birch's bonus was tied to IBSG's earnings, and has not alleged that Birch knew of any GAAP violation prior to informing the public. Unlike the cases he relies upon, Plaintiff has failed to plead virtually any specific allegations of scienter as to Birch. Consequently, Birch's motion should be granted.

Accordingly, it is

ORDERED that:

1. Defendant Jewett, Schwartz, Wolfe & Associates' Motion to Dismiss [DE-46] is GRANTED;

2. Defendant Geoffrey Birch's Motion to Dismiss [DE-47] is GRANTED;

3. Plaintiff shall file an amended complaint, if he has the facts to support it, by

15

**September 15, 2010.** In deciding whether to amend his complaint, Plaintiff shall be guided by Federal Rule of Civil Procedure 11. Furthermore, because the Motion for Class Certification has been stricken, Plaintiff's amended complaint should not contain any class allegations.

DONE AND ORDERED in Miami, Florida, this ___ day of September, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record